**The PEOPLE of the State of Colorado, Complainant,**

v.

**Myles Joseph DOLAN, Attorney–Respondent.**

**No. 88SA371.**

Supreme Court of Colorado, En Banc.

March 27, 1989.

As Modified on Denial of Motions for Clarification and for Modification April 10, 1989.

George S. Meyer, Disciplinary Counsel, Denver, for complainant.

Myles J. Dolan, Arvada, pro se.

VOLLACK, Justice.

In this disciplinary proceeding, a hearing panel of the Supreme Court Grievance Committee (panel) has recommended that the respondent-attorney, Myles J. Dolan, be suspended from the practice of law for one year and one day. The panel recommended that the respondent be ordered to refund the attorney fees paid to him plus statutory interest. The panel also recommended that the costs of these proceedings be assessed against the respondent. We accept the latter parts of this recommendation, but order that the respondent be suspended from the practice of law for a period of six months.

### I.

The attorney-respondent, Myles J. Dolan (Dolan or the respondent), was admitted to the bar of the Supreme Court of the State of Colorado in 1964 and is registered upon the official records of this Court, registration number 4128. He is, therefore, subject to the jurisdiction of this Court and its Grievance Committee in these disciplinary proceedings.

This disciplinary action arose from the respondent's dealings with his clients, an organization called Citizens Against Action Kennel (CAAK) and one of CAAK's members, Mr. James Quinn. For a number of years, CAAK was involved in opposing the maintenance and zoning of a dog kennel in Arvada, Colorado, owned by John and Judith Pusok. After the Jefferson County Board of Adjustment ruled that the property owners could continue using their property for a dog kennel, CAAK retained Dolan as counsel in 1985 to appeal the board's decision.

On March 21, 1985, the respondent filed a complaint in this matter in Jefferson County District Court and requested certification of the transcript and the record. The respondent served Judith Pusok and the board, but was unable to locate John Pusok.

On April 25, 1985, Dolan sent a letter to Mr. and Mrs. Quinn, notifying them regarding service of the parties, transmittal of the record, and the answers filed. He included a statement for $840.00 in attorney fees [1] and $123.75 in costs. Through the summer of 1985, the only communication between the respondent and his clients involved one "chance" meeting, and a telephone call by Mr. Quinn to the respondent on August 15, 1985.

On September 10, 1985, Mr. Quinn wrote a letter to the respondent asking him to communicate with the members of CAAK. The respondent agreed to answer CAAK members' questions during the week of September 23, 1985. Quinn and another CAAK member met with Dolan on October 2 and Dolan promised that they would receive a progress report from him by October 10. When Mr. Quinn did not receive the promised report by October 12, he telephoned the respondent to inquire regarding the status of the case. The respondent did not answer Mr. Quinn's inquiry. On October 17, Mr. Quinn wrote another letter to the respondent requesting information about the case.

One month later the respondent wrote a letter to Mr. Quinn, expressing his opinion that the lack of personal service on John Pusok was not important, and stating that an opening brief would be filed in the case by December 20, 1985.

The Hearing Board of the Grievance Committee (board) found that "the next few months were characterized by repeated instances of oral, written, personal and

---

**1.** No other attorney fees were collected by the respondent in this matter.

telephone requests for information by Mr. Quinn which were answered by a variety of excuses and equivocation on the part of the respondent." On the advice of the respondent, Mr. Quinn obtained a copy of a Motion and Order for Service by Publication, in order for the respondent to serve John Pusok by publication in the March 7, 1986 issue of the Golden Transcript. Over the next three weeks, Quinn contacted the respondent's office "every few days for progress on the case." When the Transcript was published on March 7, it did not contain notice of service on John Pusok. The Golden Transcript advised Mr. Quinn that no such publication had been received by its office.

Shortly thereafter, Mr. Quinn retained new counsel. The new lawyer discovered that nothing had been filed in CAAK's case since the March 21, 1985 complaint, the filing of the transcript, and the record of appeal. Based on this information, the board concluded that the respondent had not performed any work on the case after May 21, 1985. The new lawyer has been paid about $1,200.00 in fees, and has obtained permission from the Jefferson County District Court to set a briefing schedule and file briefs out of time in this matter.

The respondent concedes that the undue delays by him constitute neglect. The respondent also concedes that his negligent conduct resulted in prejudice to the administration of justice. The hearing board concluded that it was established by clear and convincing evidence that the respondent violated DR6–101(A)(2) (handling a legal matter without adequate preparation), DR6–101(A)(3) (neglect of a legal matter), and DR1–102(A)(5) (conduct prejudicial to the administration of justice).

The respondent's prior disciplinary record consists of three letters of admonition and one private censure. In March 1973, he received a letter of admonition for his delay in handling and closing an estate. In May 1974, he was disciplined by a letter of admonition for delay in handling a bankruptcy matter. In September 1979, a third letter of admonition was issued for neglect of a tax matter and conduct involving dis-

honesty, fraud, deceit or misrepresentation regarding statements the respondent made to a client, a fellow attorney, and the Grievance Committee. In March 1986, the respondent was disciplined by a private censure for neglect of a domestic relations matter.

The hearing board found the presence of four aggravating factors: prior disciplinary offenses, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. See ABA Standards for Imposing Lawyer Sanctions, Standard 9.22(a), (c), (d) & (i) (1986). In mitigation, the board found that personal or emotional problems were a factor contributing to the respondent's misconduct.

## II.

The ABA Standards provide:

4.42 Suspension is generally appropriate when:

    (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

    (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

ABA Standards 4.42 & 4.43 (1986). After reviewing these standards and the mitigating and aggravating factors, the board concluded that suspension of one year and one day was an appropriate sanction. The panel agreed, and recommended to this court that the respondent be suspended for one year and one day.

We agree with the board's factual findings. We also agree that suspension is the appropriate sanction. We conclude, however, that a suspension of six months is adequate to serve the purposes for imposing a sanction. This conclusion derives in part from the acknowledgement that although the respondent's negligence created the potential for injury to the client, no apparent injury resulted. In addition, the respondent's suspension is conditional upon

his return to his clients of the attorney fees paid to him plus statutory interest. A six-month suspension is consistent with other disciplinary measures ordered by this court. *See People v. Larson,* 716 P.2d 1093 (Colo.1986) (neglect of entrusted legal matter and failure to carry out contract of employment warrants six-month suspension); *People v. Southern,* 638 P.2d 787 (Colo.1982) (attorney's neglect or abandonment of legal matters entrusted to him warrants surrender of license for six months); *People v. Emmert,* 632 P.2d 562 (Colo.1981) (attorney's neglect which caused adverse tax consequences to clients and exposed them to personal liability warrants six-month suspension); *People v. Bugg,* 200 Colo. 512, 616 P.2d 133 (1980) (failure to process estate, to file action, and to communicate with clients, when considered with the mitigating factor of personal problems, warrants six-month suspension).

Accordingly, we order that the respondent be suspended for six months. The suspension begins on May 27, 1989.[2] The respondent is ordered to refund the $840.00 in attorney fees that he collected, plus statutory interest from May 21, 1985, to the complaining witnesses as a condition of reinstatement. The respondent is also ordered to pay the costs of these proceedings in the amount of $138.07 to the Supreme Court Grievance Committee, 600 17th Street, Suite 500S, Denver, Colorado 80202, within thirty (30) days from the effective date of this opinion.

---

**2.** C.R.C.P. 241.21(a) provides that suspension orders "shall become effective thirty days after the date of entry of the order, or at such other time as the Supreme Court may order." 7A C.R.S. (1988 Supp.).